161 P.2d 867

## ARANBÚLA v. BANNER MIN. CO.

### No. 4887.

Supreme Court of New Mexico.

Sept. 15, 1945.

H. A. Kiker, of Santa Fe, and L. P. McHalffey, of Lordsburg, for appellant.

E. Forrest Sanders, of Lordsburg, for appellee.

MABRY, Chief Justice.

This is an appeal from a judgment adverse to defendant-company in suit brought under our Workmen's Compensation Act. It is alleged that the injury relied upon was suffered by accident arising out of, and in the course of, plaintiff's employment and while he was employed by defendant, on or about the 23rd day of January, 1943. The claimant was a miner and timber man in underground workings on property belonging to defendant and had worked for a long period of time immediately preceeding the date above mentioned and he charges injury and total disability due to having been exposed to, and having breathed, silicon dioxide dust in harmful quantities, thereby causing silicosis. Claimant alleges his average weekly earnings, upon which compensation should be computed, to be $45.

The defense urged was one of both law and fact. As a legal defense, defendant relied upon the following propositions: (a) Silicosis is not compensable under the terms of our Workmen's Compensation law; (b) silicosis is a disease not caused by accident and not arising from accident; (c) the nature of silicosis is such that not less than two years, and often many more years, are required for the disease to manifest its presence after its inception, and that no notice was served upon defendant and no claim was filed in the district' court within 12 months from the inception of said disease, if in fact claimant has it.

For further defense, defendant shows that plaintiff suffered no accident resulting in injury to him at the time alleged or at any other time in the course of employment for defendant; it denies that claimant was exposed to and breathed silicon dioxide dust in harmful quantities while working for defendant, and denies that claimant was caused to have silicosis by an injury resulting from an accident sustained by him in the course of his employment by defendant; and that defendant was without knowledge or information sufficient to enable it to form a belief as to whether claimant suffers from silicosis; that defendant was without knowledge or information sufficient to enable it to form a belief as to whether claimant is totally and permanently disabled from silicosis, then closes with a general denial of plaintiff's allegations.

For a separate and affirmative defense, defendant alleged that throughout the time of plaintiff's employment, defendant's mines were equipped with every known device to prevent the breathing of silicon dioxide dust in harmful quantities and described the nature of the equipment; that claimant and all other persons were provided with respirators to prevent inhalation of silicon dioxide dust and were instructed to use them; that plaintiff, prior to his employment by defendant, and for many years, was a miner working in mines in which no precaution whatever, or little if any, had been taken to prevent workmen from breathing silicon dust and that in addition, plaintiff had worked with dry drills and other equipment which afforded no protection against breathing such dust; and that during the times that plaintiff was employed in these other mines, he actually breathed such dust and that he worked, when he was so employed by others, for considerable period ·of time in and around rock crushers whereby he was exposed to harmful quantities of silicon dust; and that silicosis is of a character of occupational disease reasonably to be expected as a natural result from working in mines and around rock crushers and other places where silica-bearing quartz and other rocks are crushed and powdered.

There is little, if any, disagreement of the parties as to the conditions under which plaintiff worked, which were normal for the industry, where all reasonable precautions had been taken for protection against silica dust, and that plaintiff, as an experienced miner, knew of the likelihood of injury from breathing such dust over a long period of time, in the normal operation of mining the metallic ore.

We have presented for decision two propositions: (a) Is claimant totally and permanently disabled? (b) Is silicosis compensable under the terms of the Workmen's Compensation Act? We have been supplied with able and exhaustive briefs by counsel for each party to this cause, greatly minimizing the necessity for exhaustive independent search for cases. We are thus materially aided in arriving at a decision in the full light of the development by statute and decision of Workmen's Compensation Acts and legislation covering occupational diseases.

█ Is silicosis compensable under the terms of the New Mexico Workmen's Compensation Act? It is the contention of the defendant that under our act and the great weight of authority, it is not; and, particularly, as it applies to the case at bar, where there is no showing of excessive exposure and the occurrence of injury relied upon was not sudden or unexpected. We believe that the great weight of authority favors the view that silicosis acquired over a period of years and without the element of excessive exposure and sudden and unexpected occurrence of injury or illness is an occupational disease and not an injury by accident. We hold that the injury complained of does not fall within our Workmen's Compensation Act. Our holding in Stevenson v. Lee Moor Contracting Co., 45 N.M. 354, 115 P.2d 342, and Webb v. New

Mexico Publishing Co., 47 N.M. 279, 141 P.2d 333, 148 A.L.R. 1002 (to be hereinafter noticed) does not contradict this view.

From Schneider's Workmen's Compensation text, Vol. III, and Horovitz on Workmen's Compensation, and cases and statutes called to our attention, appellant has set out a classification of states dealing with the workmen's compensation and occupational disease statutes and decisions, a notice of which we have found helpful in our approach to this question. We find the following states designate by statute particular diseases as being compensable independently of the element of accident: Arizona, Arkansas, Delaware, Idaho, Kentucky, Maryland, Michigan, Minnesota, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, Utah, Virginia, Washington, and West Virginia. (Arizona enacted its Occupational Disease statute in 1943, Chap. 26; Virginia in 1944, Chap. 77; and both list silicosis as an occupational disease.)

The following states propose specific statutory definitions of "occupational diseases": Arizona, Connecticut, Illinois, Indiana, Michigan, Minnesota, Nebraska, Ohio, Rhode Island, Utah, Virginia, and Washington. (In Minnesota and Nebraska the definitions were afforded by amendatory enactments in 1943, Laws Minn. 1943, c. 633; Laws Neb. 1943, c. 113.)

Michigan and New York amended their statutory silicosis provisions, relating to compensation, in 1943 and 1944. Ohio also amended its provisions on silicosis in 1943.

The following states have special provisions relating to pneumonoconiosis, silicosis and asbestosis: Idaho, Illinois, Indiana, Maryland, Massachusetts, Michigan, Minnesota, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, Washington, West Virginia, and Wisconsin.

It might not be amiss to here notice that fifteen of the forty-eight states not only specifically name silicosis, but have special statutory provisions relating thereto. A notice of these several special statutory provisions regarding silicosis, and what is said by the many text writers upon the subject, must impress one that the disease has, and does, present a special problem and that it is, generally, being dealt with specially as not coming within the provisions of the conventional workmen's compensation acts.

Our attention is further called to the fact that even if we could hold silicosis to be compensable under some particular, or unusual, circumstances, in line with some of the decisions cited and relied upon by plaintiff, yet the facts in this case could bring none of such cases to the support of plaintiff's position.

Perhaps one of the best definitions for the term "occupational disease" is to be found in the frequently quoted case of Victory Sparkler and Specialty Co. v. Francks, 147 Md. 368, 128 A. 635, 638, 44 A.L.R. 363. The definition there given is as follows:

"An occupation or industry disease is one which arises from causes incident to the profession or labor of the party's occupa-

tion or calling. It has its origin in the inherent nature or mode of work of the profession or industry, and it is the usual result or concomitant. If, therefore, a disease is not a customary or natural result of the profession or industry, per se, but is the consequence of some extrinsic condition or independent agency, the disease or injury cannot be imputed to the occupation or industry, and it is in no accurate sense an occupation or industry disease."

■ Silicosis is defined generally as a disease, and one suffering from long exposure to the silica dust has not suffered an accident as the term is employed generally in the Workmen's Compensation Acts. In the case of Stevenson v. Lee Moor Contracting Co., supra, it became necessary to determine whether the injury there complained of resulted from an accident, as distinguished from an occupational disease, since it was recognized, obviously, that occupational diseases were not covered by the New Mexico act. And we spoke of an occupational disease as "one gradually contracted in the ordinary course of employment, and due wholly to causes and conditions that are normal and constantly present and known from experience to be incidental and characteristic of the particular occupation." Silicosis meets every phase of the definition of an occupational disease as heretofore defined by this court. Certainly it must be said that this is true, absent some such unusual exposure to the hazard as we were considering in the Stevenson case.

■ In the Webb case, supra, while it is stated that accidental injuries may arise even without the usually attending factors of narrow limits of time for the beginning and completion of the injury, or without unusual, or extraordinary, conditions of employment not common to others, and, although in the Stevenson case we said that an accident may also include "an injury which is itself an accident" [45 N.M. 354, 115 P.2d 349], citing with approval Carroll v. Industrial Comm., 69 Colo. 473, 195 P. 1097, 1098, 19 A.L.R. 107, yet in neither case did we say that there must not be an accident, as distinguished from common occupational, or industrial, sickness or disease.

In both the Stevenson and the Webb cases occupational, or industrial, disease was clearly eliminated as being compensable under the act. We took up and considered the nature of the injuries complained of in both cases, under challenge that we had before us cases of occupational diseases, if anything, and held that they were compensable as accidental injuries; and thus to be distinguished from an injury or disease not accidentally inflicted or incurred which would have fallen outside the statute. It is conceded that we gave a most liberal construction to the definition of accident in both of these last mentioned cases in arriving at the results there achieved; but, it cannot be said that we intended to, or did, go so far as to bring occupational diseases as commonly understood and defined by the courts within the coverage of the act. Certainly in neither of these cases

would time of occurrence, and the incident of an unexpected happening, an accident, have drawn the full discussion which was there provoked had we been willing to concede that an occupational disease was covered by the legislation in question.

The Stevenson case, supra, can afford no comfort to plaintiff under the circumstances of the case. While we are committed to the doctrine that our Workmen's Compensation Act should be construed liberally in favor of claimants, that is not to say that we are to extend the coverage of the act beyond the purview of the statute. In that case we construed the phrase "injury by accident" noticing, and following, certain statutory and judicial guides. We said that the term, as employed in our statute, means "nothing more than an accidental injury, or an accident, as the word is ordinarily used. It denotes 'an unlooked for mishap, or an untoward event which is not expected or designed.' Fenton v. Thorley, [ [1903] A.C. 443], supra."

If the injury is the result of an event which must be expected, and is incidental to, and frequently, though not invariably, follows employment therein, it would not fall within the definition of accidental injury approved and employed by us in the above case. Any further questions than those controlling there were expressly reserved in our opinion in the Stevenson case, in this language:

"We do not decide whether appellant would have been entitled to compensation if his injury had occurred while performing the usual and ordinary labors incident to his employment, and not under the extraordinary conditions found by the court; that is, whether the *injury* and not the *cause* of it must be *unintentional* and *unexpected* to constitute an injury by accident. The facts of this case do not require it, and we express no opinion on the question." (Emphasis Ours.)

It was the "unusual and extraordinary conditions and hazards", and those "not usual to his employment," and such extraordinary conditions and hazards to which "no other of the workmen on the job was subjected", which there controlled.

The Webb case, supra, so much relied upon by plaintiff, likewise affords no aid to his position. Although we there had a case in which it may be said the time element as respects the infliction of the injury did not become important, and, likewise, the fact that the workman was not subjected to any unusual hazard or extraordinary condition not applying to other employees, nevertheless, our holding was bottomed upon an unexpected and untoward event causing the injury; the use of the soap from which the injuries to the workman arose, constituted an unlooked for mishap which was neither expected nor designed, and was accidentally caused. It cannot be said that under the facts in the case at bar there was an unlooked-for and untoward event. There is no showing of excessive exposure, or break-down of the machinery intended to minimize the presence of dust where the employee was work-

ing, and, certainly, the appellee, a miner of many years experience, knew the hazards those engaged in that character of work faced, even under favorable conditions.

To summarize briefly our holdings in the two cases so much relied upon by plaintiff:

In the Stevenson case we decided the injury there involved was an accident although it did not happen momentarily; and we pointed out the unusual conditions under which the injured employee was working when injured; and we observed, in that connection, that breathing of fumes and gases does not ordinarily, and is not expected to, cause pneumonia, as it did in that case. Then later, in the Webb case, while we took a step somewhat in advance of any holding up to that time, nevertheless, the decision rested upon the premise that the accidental infection by the use of a soap to which the claimant was allergic was unexpected and that the result was one not commonly experienced. It was a fortuitous and unexpected happening, although but for the claimant's allergy to the chemical injuring him, there would have been no accident.

In California occupational diseases are within the compensation act because of the adoption of the word "injury" in place of the word "accident" early in the history of workmen's compensation in that state. See Associated Indemnity Corporation v. Industrial Accident Commission, 1932, 124 Cal.App. 378, 12 P.2d 1075. But this distinction, we hold, should not presuade us that under our statute silicosis is an accidental injury instead of an occupational disease.

The California Court of Appeals in Argonaut Mining Co. v. Industrial Accident Commission et al., 1937, 21 Cal.App. 2d 492, 70 P.2d 216, 219, said:

"The contributing cause of silicosis is well known to the medical profession and to mining industries. It is prevalent among employees in mines, potteries, stone and slate factories, and in file-cutting and metal-grinding enterprises, where the air is permeated with minute particles of stone, quartz, slate, or metal dust which is inhaled to the detriment of the tissues, glands, and lungs. Some men appear to be immune from the disease, but a large proportion of those who are engaged in such pursuits are susceptible to silicosis. The incurring and development of this disease depend somewhat upon the constitution of the employee and upon the conditions under which he works. The course of the disease may be rapid or gradual, sometimes extending over a period of several years before the victim is finally disabled for the performance of manual labor. * * * The law clearly distinguishes between a physical injury sustained as the result of an accident and injuries which develop from progressive occupational diseases like silicosis."

It is to be noticed, therefore, that in California, where the Workmen's Compensation Act covers occupational diseases, the Court has clearly placed silicosis in that category.

In Missouri, there is no statutory definition of occupational disease and no speci-

fication of diseases which are compensable. Furthermore, the employer may elect whether to come under the occupational disease provisions of the Workmen's Compensation Act. The courts have held that silicosis is an occupational disease and in Bolosino v. Laclede-Christy Clay Products Co. et al., 1939, Mo.App., 124 S.W.2d 581, 583, said:

"Typical of occupational diseases are silicosis and pneumoconiosis, which are evidenced by pathological changes in lung tissue attributable to the effects of the inhalation of minute particles of dust over long periods of time * * *."

So, also in Missouri, the court has placed silicosis in the category of occupational diseases.

In Nevada, and in the recent case of Pershing Quicksilver Co. v. Thiers, Nev., 152 P.2d 432, 438, decided in 1944, mercurial poisoning contracted while an employee worked three months or more was held not an accident and not compensable under the Industrial Insurance Act, but an occupational disease. The Court said:

"The injury was due to a drop by drop, little by little accumulation of poison in respondent's system over a period of weeks, and the time of employment was not too short to permit it to fall into the definition of an occupational disease. The injury suffered is not referable to a distinct time and place or event. It may well be said that the evidence discloses that the injury suffered by respondent was one commonly incident to the work which he performed."

In Maryland Casualty Co. v. Broadway, C.C.A., 1940, 110 F.2d 357, 359, the Circuit Court of Appeals said the law in Texas was as follows:

"The Texas statute does not mention accident, but the courts have said that the injury must be attributable to some definite occurrence; one must be able to assign it a time and place and cause. If it arises gradually, over a long period, with no particular happening to attribute it to, it is only a disease, though caused in a general way by the work. If it is a disease that commonly is caused by such work, it is an occupational disease; which is not compensable. But if the bodily injury is referable to a definite occurrence or series of occurrences in the work, to which a time and place can be assigned, it may be compensable though it does not result instantly."

The Supreme Court of Utah in Uta-Carbon Coal Co. v. Industrial Commission, 1943, 104 Utah 567, 140 P.2d 649, 652, stated categorically: "It is well known that silicosis is an occupational disease."

Referring again to Maryland, and the Francks case, supra, language may be noted in the later case of State to Use of Wilson v. North East Brick Co., 1942, 180 Md. 367, 24 A.2d 287, 288, where the court said: "It is agreed that silicosis is an occupational disease." (The Maryland statute designates the disease as compensable.)

In Henson v. Department of Labor and Industries, 1942, 15 Wash.2d 384, 130 P.2d 885, 886, it was pointed out that by amend-

ments to the law in 1937 and 1939 provision was made for workmen suffering occupational diseases, and silicosis is there designated as one of such compensable occupational diseases. That court quoted the following from Reed & Emerson, The Relation Between Injury and Disease, p. 183, as to the nature of silicosis:

"The clinical symptoms of silicosis are shortness of breath, decreased chest expansion and lessened capacity for work, these due to a diffuse nodular fibrosis rather evenly distributed throughout both lungs, which reduces the lung air space and lessens the elasticity of the pulmonary tissues. * * *

*"Silica dust inflicts injury to the lungs, not because of the physical properties of the individual particles, as the hard, sharp particles of quartz and carborundum; but its danger lies purely in its poisonous chemical action.* Because of this, it causes tiny areas of necrosis in the walls of the lymph spaces of the alveoli in which it is deposited, at which necrotic points, by ways of healing, there develops fibrosis and a proliferation of the surrounding epithelial cells, the latter explaining the nodule formation.

"Silicosis is a progressive disease, the lung changes continuing to develop for one or two years after complete removal of the individual from the silica hazard, this advance probably due to the continued chemical action of the silica stored in the lung tissues." (Emphasis Ours.)

As hereinbefore stated, there are a few cases which hold that unusual or excessive exposure bringing an unexpected result or injury would make of silicosis an accident compensable even under the Workmen's Compensation Acts which make no special provision for occupational diseases. Among these cases is to be found Young v. Salt Lake City, 1939, 97 Utah 123, 90 P.2d 174, 177, a case involving lead poisoning. Clearly, the holding there was based upon the particular circumstances of that case. And the following formula in determining whether silicosis fell within or without the Workmen's Compensation Act of that state was given:

"We should ascertain first if the illness is one commonly recognized as incident to the usual performance of the occupation. If it is found not to be, then the question of an occupational disease is ended. If it is incident to that performance, then ascertain if some definite circumstance took place of an unexpected or unusual nature— something that broke, or interjected itself into, the usual course of the performance of the occupation. And finally, ascertain whether or not this circumstance, if one there be, accelerated or changed the effect of, the otherwise resultant occupational illness. If it did, then that illness becomes the result of an accidental injury."

The case of In re Pero, 49 Wyo. 131, 52 P.2d 690, further illustrates the view some courts have taken of silicosis as an accidental injury where there is present an unexpected happening from which the injury

is incurred in employment such as exposure to and the breathing of unusual quantities of particles of rock in the performance of the particular duty involved.

In the 1943 edition of Schneider's Workmen's Compensation Text, Volume 3, there appears a new chapter on occupational diseases. The author at page 497, Volume 3, Sec. 924, says:

"Sec. 924. Classification of Occupational Disease Acts.

"Thirty of the fifty-three American Workmen's Compensation Acts now provide compensation for either a designated varying number or all occupational diseases. Two of the states oddly fall in both of the two latter classifications because their acts originally designated a specified list of such diseases and then after some experience added a catch-all clause apparently intended to include all occupational diseases not theretofore designated. The remaining twenty-three American Acts cover principally industrial injuries accidentally sustained and are *generally construed not to include occupational diseases.*" (Emphasis ours.)

Idaho is now listed as one of the thirty states in which occupational diseases are compensable, while Colorado, New Mexico, and Utah are classed as among the twenty-three states in which occupational diseases are not compensable. Comparing this with former tabulations, it will be seen that the legislatures of many states have added occupational diseases to injuries compensable under Workmen's Compensation statutes.

Since the decision of the Supreme Court in Brown v. St. Joseph Lead Co., 60 Idaho 49, 87 P.2d 1000, in which a claimant suffering from silicosis from working for the employer in a mine was held entitled to compensation because the silicosis was caused by the negligence of the employer in failing to install safety devices, Idaho has by statute made occupational diseases compensable. This, it is suggested, was, in effect, a legislative declaration that theretofore occupational diseases were not compensable under the former Idaho statutes construed in Brown v. St. Joseph Lead Co., supra, and other cases following that decision.

Mr. Schneider, at page 501, makes the following significant observations on the Idaho cases:

"The struggle of the courts during the past three decades to provide adequate protection for industrial employees against both bodily injury and occupational disease has at times driven them into illogical entanglements, extremes of reasoning and inadvertent judicial legislating. Some have held that the generally accepted definition of occupational disease is subject to the weakness that if the disease acquired through a period of months or years could have been avoided had the employer exercised reasonable care then the disease is *not occupational but accidental and compensable* under a non-occupational disease workmen's compensation law.

"Commenting on this construction, a law review writer states: 'To hold this disease

an unexpected injury, thus one by accident, and yet exclude many, if not all, occupational diseases, taxes the mind with fine subtleties of reasoning not at all in harmony with the fundamental principles of workmen's compensation laws, which call for recompense for employees disabled in their work irrespective of the question of negligence or assumption of risk. * * * *It is submitted that the legislatures of the various other states should rescue their respective courts from the dilemma into which the occupational disease question has plunged them, preferably by providing compensation for all diseases incurred in the course of and by reason of one's employment.'* Fordham Law Review, Vol. 4, p. 147." (Emphasis Ours.)

To quote from page 505 of the Schneider text:

"On the question of the definition of, or when is a disease occupational, the author regards the well reasoned opinion of the Supreme Court of Utah, (Young v. Salt Lake City, 97 Utah 123, 90 P.2d 174) quoted from at length, post, in Sec. 1033, Utah, as the best and most concise exposition of the subject found in any of the American or English decisions, and in so commenting the author does not mean to deprecate those fine humanitarian judges who, under the usual statutory admonition to the effect that the law shall be liberally construed, have not seen fit to follow or remain on the highway so well outlined by the Utah court. To the legislatures of such non-occupational disease states the author commends for their consideration the quotation from the

Fordham Law Review found in the next preceding section."

All the text writers, and substantially all the courts and scientists, agree that silicosis is an occupational disease. Silicosis is generally referred to by experts on industrial hygiene and occupational diseases as an occupational disease. See Sappington's Medicolegal Phases of Occupational Diseases (1939). In 20 Cornell Law Quarterly, page 392, is found an able discussion of the subject.

Once we say that our statute does not cover occupational, or industrial, diseases, as we now do (and which, by inference at least, we have so determined in both the Webb and Stevenson cases), we then would be required to hold, against the almost unanimous authority, that silicosis is not such a disease but results from accident, if we were to adopt plaintiff's theory.

1941 Comp. Sec. 57-902 provides as to those carrying on an extra-hazardous occupation in New Mexico "such employer shall become liable to, and shall pay to any such workman injured by *accident* arising out of and in the course of his employment in any such occupation and pursuit * * *" compensation according to the statute.

Section 57-905 makes the new right provided for workmen "on account of injuries suffered by accident arising out of and in the course of the employment of such workman" exclusive of all other remedies. The statute does not mention "diseases" of any kind or nature. Nor is that term, or any synonym therefor, used in the

statute. *"Injuries suffered by accident,"* meaning "accidental injury," alone are made compensable.

We have said our statute is taken from that of Colorado. Stevenson case, supra. The workmen's compensation statutes of the various states differ in that some of them expressly provide only for an award in case of injury by accident. To this class of statutes the New Mexico Statute belongs. The other class of statute provides for compensation in case of personal injury. This class of statute is in effect in Iowa, Massachusetts, North Dakota, Connecticut, New Hampshire, Ohio, Michigan, North Carolina. See annotation, 94 A.L.R. 584.

Our statute, however, requires that there must be an injury caused by accident, an "accidental injury" (Stevenson case, supra); and, in the note to 90 A.L.R. 616, cases from these states are collected. See page 624. Among them are Tennessee, Washington, Texas, New Hampshire, Maryland, Indiana, and Kentucky.

One case from Colorado particularly to be noticed is United States Fidelity & Guaranty Co. v. Industrial Commission, 76 Colo. 241, 230 P. 624; it is referred to by the annotator on page 622 of 90 A.L.R. where he said:

"It was recognized that, if the employee's death had resulted from the gradual accumulation of the bad effects of the daily breathing of gas, the injury would not be compensable, but the evidence was held to show that it resulted from the inhalation of a greater amount of the gas than usual on the day of the injury."

See Notes in 90 A.L.R. 620. In case of Johnson Oil Refining Co. v. Guthrie, 167 Okl. 83, 27 P.2d 814, 816, 90 A.L.R. 616, the court offers this definition of "accidental injuries":

"In the term 'accidental injuries,' the substantive 'injuries' expresses the notion of the thing or event i.e. the wrong or damage done to the person; while 'accidental' qualifies and describes the noun by ascribing to 'injuries' a quality or condition of happening or coming by chance or without design, taking place unexpectedly or unintentionally.'"

Because of the liberal interpretation given our workmen's compensation statute, particularly the liberal construction given the term "injury by accident" in the Stevenson and Webb cases, which seems to have persuaded counsel for plaintiff that we had embraced occupational diseases such as the one now being considered, we have thought it desirable to notice, and discuss at this length, the history of legislation as influenced by the various, and often conflicting, holdings upon the question of where the line is to be drawn between occupational disease and accidental injury.

Whether much weight, as a legislative interpretation, may be given to a subsequent legislative enactment which necessarily presupposes the non-coverage of the same subject by an earlier statute, we need not decide. But it may be noticed for what it is worth that our legislature, by the en-

actment of H. B. No. 189 (not yet published) at the recent session of our legislature, for the first time, specifically provided for compensation for occupational disease in certain cases; and the act specifies silicosis as one of such diseases, in common with expert, technical and judicial authority generally.

It cannot escape notice that premiums on insurance are necessarily fixed upon the basis of the extent of coverage under the act, i.e. whether the act applies to occupational diseases as well as accidental injuries. We know that New Mexico is one of the leading mining states. It is near the top in the production of copper and zinc and is prominent in the list of the leading states producing other metallic ores. Silicosis is a common disease among all metallic ore miners. It is known that science has not yet achieved complete protection to miners employed in this character of operation, although, as in this case, generally every reasonable precaution is now being taken through the aid of good mining practices; yet such miners are, generally, exposed to dust containing silica, and of those who continue long in the occupation, many suffer from silicosis in varying degrees.

If silicosis incurred under the circumstances as here claimed is held to be covered by our compensation act, to be an accidental injury, it would be difficult to estimate the potential liability now existing on the part of the mining operators and the insurance carriers. It affords no comfort, of course, for us to say that New Mexico in respect to legislation covering occupational diseases has lagged behind many of the states—and this must be said. But, clearly, that is a matter to be addressed to the legislature, and not to the courts which are powerless to afford relief. The legislature of 1945, through the law recently enacted as above noticed, has attempted to meet the challenge that coverage for disability should be broadened to include some occupational diseases.

The trial court was in error in concluding that the illness complained of was compensable under our act. No other question raised need be considered. For the foregoing reasons the judgment is reversed with direction to set aside the judgment heretofore rendered and enter judgment for defendant, and it is so ordered.

SADLER, BRICE, and LUJAN, JJ., concur.

BICKLEY, J., concurs in the result.