2005-NMCA-127

122 P.3d 1279

**Phillip SALAZAR, Plaintiff–Appellant,**

v.

**Richard TORRES, individually and as owner and operator of Richard L. Torres Concrete Company, Defendant–Appellee.**

**No. 23,841.**

Court of Appeals of New Mexico.

Sept. 12, 2005.

Certiorari Granted, No. 29,476, Nov. 7, 2005.

**512**

Rod Dunn, Rio Rancho, NM, Kerry Morris, Morris Law Firm, Albuquerque, NM, for Appellant.

Richard J. Shane, Myra F. Moldenhauer, Riley, Shane & Hale, P.A., Albuquerque, NM, for Appellee.

## OPINION

ROBINSON, Judge.

{1} Phillip Salazar (Worker) appeals from an order of the district court granting the motion for summary judgment of Defendants Richard Torres and Richard L. Torres Concrete Company (together, Employer). The question presented on appeal is whether Worker is precluded from pursuing his common law claims for damages pursuant to *Delgado v. Phelps Dodge Chino, Inc.*, 2001–NMSC–034, 131 N.M. 272, 34 P.3d 1148 because he has already received workers' compensation benefits. We hold that receipt of workers' compensation benefits does not bar Worker's *Delgado* claims. Therefore, we reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

{2} Phillip Salazar was an employee of Richard L. Torres Concrete Company when he was injured. Worker was injured after being instructed by Employer to start a truck by pouring gasoline into the carburetor. While Worker was pouring gasoline into the truck's carburetor, Employer instructed Employer's son (Son) to climb into the cab of the truck and start the ignition. Worker was unaware that the truck's ignition was about to be started. When Son started the ignition, the engine ignited the container of gasoline in Worker's hand. The resulting fire severely burned Worker.

{3} Following Worker's injury, he received workers' compensation benefits from Employer's insurer and settled his claim for indemnity benefits. Worker then filed a complaint in district court against Employer seeking monetary damages pursuant to *Del-*

*gado.* In his complaint, Worker alleged that, by ordering Son to start the truck while Worker was pouring gasoline into its carburetor, Employer "engage[d] in an intentional act ... without just cause or excuse" that was virtually certain to cause serious injury to Worker that he "reasonably [should have] expected [would] result in the injury ... [to][W]orker," and that Employer "utterly disregarded the consequences" to Worker. *Id.* ¶ 26. Employer subsequently filed a motion for summary judgment, arguing that the exclusivity provisions of the Workers' Compensation Act (Act), NMSA 1978, §§ 52–1–1 to –1–70 (1929, as amended through 2004) preclude Worker from bringing any other actions against Employer for his injuries. Following Worker's response to Employer's motion, Employer, for the first time in its reply to the response, contended that Worker's version of the facts, even if true, would not rise to the level of egregiousness sufficient to support a *Delgado* claim. The district court granted Employer's summary judgment motion, but did not explain the reasoning behind its decision. Worker appeals.

### STANDARD OF REVIEW

{4} Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Rule 1–056 NMRA. In this case, neither party argues that genuine issues of material fact exist. Therefore, we "review the disposition of the summary judgment motion[ ] de novo." *State Farm Mut. Auto. Ins. Co. v. Barker,* 2004–NMCA–105, ¶ 4, 136 N.M. 211, 96 P.3d 336. We also review the district court's decision *de novo* because it involves a question of statutory construction. *See Cerrillos Gravel Prods., Inc. v. Bd. of County Comm'rs,* 2004–NMCA–096, ¶ 4, 136 N.M. 247, 96 P.3d 1167.

### DISCUSSION

### I. WORKERS' COMPENSATION ACT

{5} "The purpose of the Act is to 'assure the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers at a reasonable cost to the employers.' " *Morales v. Reynolds,* 2004–NMCA–098, ¶ 6, 136 N.M. 280, 97 P.3d 612 (*quoting* NMSA 1978, § 52–5–1 (1990)).

To achieve this objective, the Act strikes a bargain between workers and employers "based on 'a mutual renunciation of common law rights and defenses by employers and employees alike.' " *Delgado,* ¶ 12 (quoting § 52–5–1). "The injured worker receives compensation quickly, without having to endure the rigors of litigation or prove fault on behalf of the employer." *Id.* In exchange, the employer is assured that the injured worker "will be limited to compensation under the Act and may not pursue the unpredictable damages available outside its boundaries." *Id.*

### A. Compensation for Accidental Injuries

{6} The Act provides that, with some inapplicable exceptions, each employer in New Mexico "shall become liable to and shall pay to any such worker injured by accident arising out of and in the course of his employment ... compensation in the manner and amount at the times required in the ... Act." NMSA 1978, § 52–1–2. Based on this provision, our Supreme Court has long held that compensation is only available to workers who are accidentally injured; non-accidental injuries are not compensable under the Act. *Delgado,* 2001–NMSC–034, ¶ 13; *see Aranbula v. Banner Mining Co.,* 49 N.M. 253, 263–64, 161 P.2d 867, 873–74 (1945). Our court has also long held that an "accidental injury" is "an unlooked-for mishap or some untoward event that is not expected or designed." *Cisneros v. Molycorp, Inc.,* 107 N.M. 788, 791, 765 P.2d 761, 764 (Ct.App.1988); *see Aranbula,* 49 N.M. at 258, 161 P.2d at 870. Although our courts have not considered the proper frame of reference for determining whether an injury is "accidental" under the Act, we hold that the accidental nature of an injury must be determined from the perspective of the injured worker. *Accord Sch. Dist. No. 1 v. Dep't of Indus., Labor & Human Relations,* 62 Wis.2d 370, 215 N.W.2d 373, 376 (1974) (noting that to "determin[e] whether there has been an accident [for the purposes of the Act, the court] must look from the perspective of the injured person"); *see also Konrady v. U.S. Airways, Inc.,* 165 N.C.App. 620, 599 S.E.2d 593, 596 (2004) (noting that "[t]o be an accident, the incident must have been

for the employee an unlooked for and untoward event." (internal quotation marks and citation omitted)); *Pee v. AVM, Inc.*, 352 S.C. 167, 573 S.E.2d 785, 787 (2002) (holding that "if an injury is unexpected from the worker's point of view, it qualifies as an injury by accident"). In other words, if a worker does not expect or design the untoward event that leads to his injury, he has suffered an accidental injury for the purposes of the Act. *See Cisneros*, 107 N.M. at 791, 765 P.2d at 764.

{7} In this case, Worker alleges that he was injured because Employer commanded Son to start the ignition of the truck. From Worker's perspective, the injury was unexpected and, therefore, accidental. Because Worker was accidentally injured while performing a task for his Employer, his injury is clearly compensable under the Act. *See* § 52–1–2.

**B.** *Exclusivity of the Act's Remedies*

{8} Because we conclude that the Act required Employer to compensate Worker for his injury, our next inquiry is whether Worker's receipt of compensation bars him from pursuing his tort claims against Employer. The Act provides that its remedies are exclusive. § 52–1–6(E). By complying with the terms of the Act, each employer and its workers are presumed to have "surrender[ed] . . . their rights to any other method, form or amount of compensation or determination thereof or to any cause of action at law, suit in equity or statutory or common-law right to remedy or proceeding whatever for." § 52–1–6(D).

{9} Although the Act's exclusivity provisions are broadly written, our courts have established that there are circumstances in which an injured worker may pursue remedies outside of the Act for his work-related injuries. An exception to the Act's exclusivity provisions was first recognized by this Court in *Gallegos v. Chastain*, 95 N.M. 551, 553, 624 P.2d 60, 62 (Ct.App.1981), *overruled by Delgado*, 2001–NMSC–034, ¶ 23. In *Gallegos* and its progeny, our courts held that a worker was not precluded from seeking relief outside of the Act when his injury was the result of his employer's "actual intent to injure" him. *Id.; see Coleman v. Eddy Potash, Inc.*, 120 N.M. 645, 905 P.2d 185 (1995); *Johnson Controls World Servs.,*

*Inc. v. Barnes*, 115 N.M. 116, 118, 847 P.2d 761, 763 (Ct.App.1993).

{10} Subsequently, in *Delgado*, our Supreme Court overruled the *Gallegos* "actual intent" test and replaced it with a broader standard. 2001–NMSC–034, ¶ 23. Under *Delgado*, a worker may pursue remedies outside of the Act if his "employer intentionally inflicts or willfully causes . . . [him] to suffer an injury." *Id.* ¶ 24. The Court based its decision on the fact that the Act requires workers and employers to be "held to the same standard of conduct." *Id.* Because a worker may not recover for injuries that are the result of his willfulness, the Court held that an "employer may not enjoy the benefits of exclusivity" if the worker was injured due to the employer's willful act. *Id.* ¶¶ 21, 24. The Court further held that a worker's injury is the result of a willful act if "(1) the worker or employer engages in an intentional act or omission, without just cause or excuse, that is reasonably expected to result in the injury suffered by the worker; (2) the worker or employer expects the intentional act or omission to result in the injury, or has utterly disregarded the consequences; and (3) the intentional act or omission proximately causes the injury." *Id.* ¶ 26.

{11} In this case, Worker alleges that he was injured because Employer willfully ordered Son to start the ignition of the truck. The Act is intended to provide accidentally-injured workers, such as Worker, with benefits quickly and efficiently without unduly burdening employers. *See Morales*, 2004–NMCA–098, ¶ 6. It was never "intended to immunize employers from liability for intentional torts." *Delgado*, 2001–NMSC–034, ¶ 30. However, if we were to accept Employer's argument that Worker's tort claim is barred by his receipt of benefits under the Act, employers could effectively immunize themselves from tort damages by persuading their injured employees to accept the expedient and certain remedy under the Act, rather than pursuing the slow and uncertain remedy of tort damages. *See Jones v. VIP Dev. Co.*, 15 Ohio St.3d 90, 472 N.E.2d 1046, 1054 (1984) (noting that limiting a worker's compensation to the benefits available under the Act may encourage intentional misconduct by

employers). Moreover, we note that employers may attempt to force the choice upon their workers by initiating the claim for workers' compensation. *See Eldridge v. Circle K Corp.*, 1997–NMCA–022, ¶ 12, 123 N.M. 145, 934 P.2d 1074; NMSA 1978, § 52–5–5(A) (1993) (stating that "any party may file a claim" for compensation under the Act). We refuse to require workers to confront such a question when, as a result of their injury, their "families may depend for livelihood on the compensation [available] under the Act." *Delgado*, 2001–NMSC–034, ¶ 31. Further, "[m]ost seriously injured workers are not in a financial position to wait out a lengthy, expensive and risky court proceeding to be compensated for the injury, due to the problems of pressing medical bills, and often the inability to work." *Jones*, 472 N.E.2d at 1054. As a result, "[t]o consider the receipt of benefits a forfeiture of an employee's right to pursue the employer in the courts would not only be harsh and unjust, it would also frustrate the laudable purposes of the Act." *Id.*

{12} In *Eldridge*, the worker, an employee of Circle K, was shot and killed by a customer. Circle K initiated and filed its own action with the Workers' Compensation Administration (WCA), requesting a determination of benefits due to worker's estate. Subsequently, the personal representative of worker's estate filed a civil action in district court against Circle K, claiming intentional wrongful acts. The Workers' Compensation Judge denied the personal representative's motion to dismiss and determined that he had jurisdiction to decide the question whether Circle K's acts were intentional, or whether worker's death was accidental. The personal representative appealed.

{13} We held that if a worker claims a cause of action based on deliberate, intentional injury by the employer, "the district court should exercise initial jurisdiction to determine jurisdiction." *Id.* ¶ 26. Further, upon claimant's request, the Workers' Compensation Judge (WCJ) should defer, suspending further action, until the tort claim is finally resolved, including appeal if necessary, so that if the tort action fails, workers' compensation proceedings could then move forward. *Id.* We reasoned that since the WCJ presides over an administrative court of limited jurisdiction with restricted opportunities for discovery, limited testimony, and no jury trial, Worker's ability to prove his claim for intentional wrongful acts may suffer from the restricted workers' compensation process and his constitutional right to a jury trial may be jeopardized. *Id.* ¶ 24. We added that "[w]e can best achieve the legislative goal by allowing the WCJ to decide claims that clearly fall within the Act [accidents], and shifting to the district court the task, for which it is better equipped, of deciding whether claims have been stated that [are intentional acts that] fall outside the Act." *Id.* ¶ 29.

{14} In our case, as in *Eldridge*, Employer initiated the workers' compensation claim with its insurer. Also, as in *Eldridge*, Worker's *Delgado* claim presents material issues concerning Employer's subjectivity, and thus the proper forum to determine the issues of willful or intentional misconduct that fall outside the Act is with the district court. Finally, an employee is not required to suspend the workers' compensation proceeding in order to bring the tort claim because this would be inconsistent with the legislative intent of the Act which is "to assure the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers [for accidental injuries]." § 52–5–1. To illustrate, an injured worker who is injured by the simple negligence of his employer is afforded the quick and efficient delivery of medical care and disability benefits under the Act, but to preclude that worker from any benefits because of his employer's willful or intentional misconduct would be unjust and illogical. If a worker can pursue a workers' compensation claim with the WCA after an unsuccessful tort claim, as in *Eldridge*, then clearly, a worker should be able to receive such benefits initially, and then pursue a tort claim against employer for willful or intentional misconduct thereafter. "The *quid pro quo* in which the exclusivity provisions have their genesis does not sanction absolving an employer from its own intentional acts. Consequently, when [this Court] confront[s] a case in which the employer has acted intentionally or deliberately, our decisions do not impose the Act's exclusivity preclusions."

*Martin–Martinez v. 6001, Inc.,* 1998–NMCA–179, ¶ 6, 126 N.M. 319, 968 P.2d 1182.

{15} The dissent expresses concern that "the majority tips this balance entirely to the side of the worker, contrary to the mandate of NMSA 1978, § 52-5-1 (1990) (providing that the Act is not to be read in favor of one side or the other, workers or employers), by allowing a worker to obtain the expeditious payment of benefits without giving up anything." Dissent at 1288.

■ {16} We disagree with the dissent for two major reasons. First, the balance between the worker and the employer in the Act was designed for accidental events or acts, not willful or intentional acts. Second, it is not the worker who should give up anything when his employer has committed a willful or intentional injury upon him. It is the employer who should be penalized by giving up something because he has violated the bargained-for rules of the game and destroyed the equilibrium of a fair and equal balance. "The Act is designed to provide quick and reliable recovery for injured workers while at the same time protecting society by shifting the burden of caring for injured workers away from society and toward industry." *Breen v. Carlsbad Mun. Sch.,* 2005–NMSC–028, ¶ 36, 138 N.M. 331, 120 P.3d 413, (2005). Further, though it was the legislature's intention for accidentally-injured employees to receive compensation quickly, certainly the Act cannot be utilized as a shield for the employer's willful or intentional misconduct because such intentional misconduct was not bargained for by employees and is, therefore, outside the scope of the Act. To allow that would encourage employers to weigh the economic costs of compliance with safety regulations and concerns against the costs of worker's compensation insurance. In essence, employers would chose the least expensive course of conduct, even if that were to be the intentional injury of an employee. We believe it is good policy for an employer to initiate a worker's claim for quick and needed assistance. But, such an initiative should not be utilized as a tactic for invoking the exclusivity provisions of the Act and barring the worker from a tort claim.

{17} Therefore, we hold that Worker's receipt of compensation under the Act does not bar his tort claim against Employer for damages caused by Employer's intentional or willful conduct. *Accord Gagnard v. Baldridge,* 612 So.2d 732, 736 (La.1993) (holding that when an employee is injured by his employer's tortious conduct, his employer owes him damages and compensation under the Act); *Woodson v. Rowland,* 329 N.C. 330, 407 S.E.2d 222, 228 (1991) (holding that "when an employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct," the employee may pursue a civil action against his employer and also pursue benefits under the Workers' Compensation Act); *Jones,* 472 N.E.2d at 1054 (holding that an employee injured by his employer's misconduct may pursue common-law damages and a claim for workers' compensation).

■ {18} Although an employee may recover both civil tort damages and compensation under the Act for injuries that are intentionally or willfully inflicted by his employer, we note that a worker may not be doubly compensated. *See Gutierrez v. City of Albuquerque,* 1998–NMSC–027, ¶ 5, 125 N.M. 643, 964 P.2d 807 (noting that "if the worker's tort suit is successful, the [Act] prevents the worker from receiving a windfall by granting the employer an interest in the tort recovery to reimburse it for compensation paid to the worker" (emphasis omitted)); *see also Woodson,* 407 S.E.2d at 228 (noting that although a worker may pursue a tort action and seek benefits under the Act, "[t]here may . . . only be one recovery"); *Gagnard,* 612 So.2d at 736 (holding that a worker is not allowed "to be compensated doubly for the same elements of his damages"); *but see Jones,* 472 N.E.2d at 1055 (holding that "[a]llowing a worker to receive workers' compensation benefits in conjunction with common-law damages in no way constitutes a double recovery"). Therefore, if Worker recovers tort damages from Employer, the damages must be offset by the amount received by Worker as compensation under the Act. *See* NMSA 1978, § 52–5–17(B) (1990) (stating that the worker's acceptance of compensation under the Act "shall operate as an assignment to the employer . . . of any cause of action, to the extent of payment by the employer . . .

for compensation or any other benefits to which the worker was entitled under the ... Act."); *see also Montoya v. AKAL Sec., Inc.,* 114 N.M. 354, 357, 838 P.2d 971, 974 (1992) (noting that "once the employer has begun payment of compensation benefits to the [worker], such payment operates as an assignment of the cause of action against the third-party tortfeasor, pro tanto for payments made under the Act.").

{19} Finally, we do not believe that our holding today will unduly burden employers in New Mexico. First, we note that employers may entirely avoid the consequences of our decision, as our Supreme Court has noted "by simply refraining from intentionally or willfully injuring workers." *Delgado,* 2001–NMSC–034, ¶ 31. Second, "we seriously doubt that employers are willfully injuring their workers with such frequency that the consequence of our decision to" subject such employers to tort liability after they have compensated workers under the Act "will be to 'wreak havoc' with the workers' compensation system." *Id.*

## II. *EMPLOYER'S REMAINING ARGUMENTS*

### A. *Election of Remedies Doctrine*

{20} In support of its motion for summary judgment, Employer argued that Worker was barred by the election of remedies doctrine from pursuing his tort claims. On appeal, Employer renews this argument.

{21} The election of remedies doctrine is intended "to prevent vexatious and multiple litigation of causes of action arising out of the same subject matter." *Three Rivers Land Co. v. Maddoux,* 98 N.M. 690, 693, 652 P.2d 240, 243 (1982), *overruled on other grounds by Universal Life Church v. Coxon,* 105 N.M. 57, 58, 728 P.2d 467, 469 (1986). However, the doctrine "has been constantly criticized as harsh and not a favorite of equity." *Id.*

{22} Under the election of remedies doctrine, "if a party has two inconsistent existing remedies on his cause of action and makes choice of one, he is precluded from thereafter pursuing the other." *Romero v. J.W. Jones Constr. Co.,* 98 N.M. 658, 661, 651 P.2d 1302, 1305 (Ct.App.1982) (internal quotation marks and citation omitted). Two

remedies may be inconsistent for a number of reasons, including that one remedy is based on a theory that "involves the negation or repudiation of another asserted" remedy; "one statutory remedy explicitly precludes another;" or "a double recovery would result." 25 Am.Jur.2d *Election of Remedies* § 20 (2004).

{23} Although Employer fails to explain why it believes that the remedies Worker seeks are inconsistent, the only viable theory of inconsistency is double recovery, i.e., if Worker received his tort damages and his compensation under the Act, he would doubly recover. However, as we have noted above, Worker may not recover twice for the same injury. His tort damages must be offset by his compensation under the Act. *See Montoya,* 114 N.M. at 357, 838 P.2d at 974. Because Worker may not be doubly compensated for his injury, we hold that his remedies are not inconsistent. *See Woodson,* 407 S.E.2d at 233 (holding that "[a]llowing an injured worker to pursue both avenues to relief does not run afoul of the goal of the election doctrine, which is to prevent double redress of a single wrong."). Therefore, the election of remedies doctrine does not apply.

### B. *Collateral Estoppel and Invited Error*

{24} Employer also argues that Worker's claim is barred by collateral estoppel. Because the WCA entered an order in which it found that Worker's injury was accidental, Employer argues that Worker is now barred from arguing that his injury was the result of Employer's willful or intentional conduct. However, as we have discussed above, Employer's alleged misconduct does not change the fact that Worker's injury was accidental from his perspective. *See e.g., Woodson,* 407 S.E.2d at 233 (noting that "[i]t is ... not inherently inconsistent to assert that an injury caused by the same conduct was both the result of an accident, giving rise to the remedies provided by the Act, and an intentional tort").

{25} Employer also argues that Worker's tort claim is barred by invited error. To support this argument, Employer reads Worker's tort claim as an attack on the jurisdiction of the WCA. We are not persuad-

ed. We fail to see how Worker is arguing that the WCA lacked jurisdiction to hear his claim for workers' compensation.

### C. *Accord and Satisfaction*

■ {26} Employer also argues that Worker's claim is barred because his acceptance of the WCA's Recommended Resolution constituted an accord and satisfaction of his claims relating to his injury. Employer's argument is based on its assertion that Worker may not sue in tort if he has already received compensation under the Act. In response, Worker argues that the Recommended Resolution only settled his claims under the Act, not his tort claims. We agree with Worker.

### D. *Pleadings*

■ {27} Finally, Employer argues that even if true, Worker's allegations do not satisfy the elements necessary to support a *Delgado* claim. However, Worker's complaint tracks the language of *Delgado* verbatim in so far as alleging the mental state on Employer's part, and Employer never submitted an affidavit in contesting these allegations. Our law simply requires notice pleading, *Schmitz v. Smentowski,* 109 N.M. 386, 389–90, 785 P.2d 726, 729–30 (1990), and without any motion for summary judgment supported by Employer's own affidavit regarding willfulness, we hold that Worker's allegations tracking the language of *Delgado* were sufficient to withstand what was tantamount to a motion to dismiss for failure to state a claim.

### CONCLUSION

{28} We hold that Worker's tort claim is not barred by his receipt of compensation under the Act. As a result, we conclude that, on this record, Employer was not entitled to judgment as a matter of law and its motion for summary judgment should have been denied. Therefore, we reverse and remand for proceedings consistent with this opinion.

{29} **IT IS SO ORDERED.**

I CONCUR: MICHAEL E. VIGIL, Judge.

LYNN PICKARD, Judge (specially concurring in part and dissenting in part).

PICKARD, Judge (specially concurring in part and dissenting in part).

{30} I am unable to concur in the majority opinion's holding, which permits workers to accept the benefits of the workers' compensation system and then sue employers in tort. In addition, while I do not disagree with much of what is contained in the majority opinion on the other issues discussed, I write separately because, if this jurisdiction is going to allow employers to fund tort suits against themselves, I believe we would be wise to adopt a special pleading rule such as is present in the majority of states, which is to the effect that the worker's tort complaint must allege specific facts from which a conclusion can be drawn that the exclusivity bar of the Workers' Compensation Act is not present.

### 1. *Tort Suit Following Collection of Benefits*

{31} As the majority notes, Worker received workers' compensation benefits, settled his claim for indemnity benefits, and then filed a complaint in district court. Majority Opinion, ¶ 3. In fact, his complaint was filed just days after a mediation conference in which the recommended resolution, ultimately accepted by both parties, was to settle Worker's claim for permanent partial disability for a lump sum, representing all future benefits except medical expenses, which were left open.

{32} In ruling that Worker may accept compensation and then turn around and sue in tort, the majority follows a number of cases allowing such a procedure. However, there are a number of other cases that do not allow such a procedure. *See, e.g., Williams v. Delta Steel Corp.,* 695 N.E.2d 633, 636–37 (Ind.Ct.App.1998); *Medina v. Herrera,* 927 S.W.2d 597, 600–02 (Tex.1996); *see generally* 6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* [hereinafter *Larson's* ] § 102.03[2] (2004) (stating that a "successful compensation claim will ordinarily bar a subsequent damages suit" (footnotes omitted)).

{33} There appear to be various formalistic reasons why some cases do not allow tort suits to follow successful claims for compen-

sation. For example, the *Medina* case held that the doctrine of election of remedies precluded the worker from pursuing the inconsistent remedies of claiming that an event was an accident and at the same time intentional. 927 S.W.2d at 600–02. The *Williams* case also referred to election of remedies and, in addition, referred to other cases indicating that a workers' compensation award is res judicata as to the accidental, as opposed to intentional, nature of the worker's injuries. 695 N.E.2d at 635. I agree with the majority that such formalism is not warranted in determining whether a worker can collect compensation benefits and then sue in tort, and I agree that there is nothing inconsistent in viewing the accidental nature of the injuries from the worker's perspective while viewing the intent requirement from the employer's perspective. *See Larson's* § 103.02 (explaining that it is not inconsistent to analyze the incident from the perspective of the person having the burden of establishing the affirmative, which would be different for workers than for employers).

{34} To me, the real reason for holding one way or another on the issue at hand, at least in the absence of legislative guidance such as was present in the *Gagnard* case, 612 So.2d at 735, should be one's views of the policy and philosophy behind the Workers' Compensation Act. Even the seminal *Delgado* case recognizes that the Act represents a bargain between employers and workers pursuant to which each gives up rights and obligations in return for some other benefit. 2001–NMSC–034, ¶ 12. The Act balances a worker's need for expeditious payment of benefits and an employer's need to limit liability. *Id.* In my view, the majority tips this balance entirely to the side of the worker, contrary to the mandate of NMSA 1978, § 52–5–1 (1990) (providing that the Act is not to be read in favor of one side or the other, workers or employers), by allowing a worker to obtain the expeditious payment of benefits without giving up anything. This was exactly the rationale of the *Williams* case in rejecting the worker's argument that the majority in our case has accepted:

> We also reject the Williams' public policy argument. Specifically, the Williams assert:

Even assuming, *arguendo,* that an employee was familiar with the Worker's Compensation Act and realized that by agreeing to receive temporary total disability benefits and having had his medical bills paid by his employer's compensation carrier, he was waiving his right to pursue an intentional tort claim, the employee is presented with the untenable choice of waiving his right to pursue a legitimate intentional tort claim, or being forced to survive with no income and not having his medical bills paid until a court finally resolves the question of whether he may pursue an action in state court.

> We disagree that the election of remedies doctrine places an employee in an "untenable position." The election of remedies doctrine naturally flows from the exclusivity provision of the Act. That provision "is part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, he is relieved of the prospect of large damage verdicts." 6 *Larson's Workers' Compensation Law,* § 65.20 at 12–1 to 12–12 (1997); *see also Baker,* 637 N.E.2d at 1274 ("Workers compensation obviates the uncertainty, delay and expense of common law remedies by substituting a fixed compensation according to reimbursement schedules."). Given the policies served by the Act, we cannot conclude that an injured employee should benefit from the advantages afforded by the Act and still avail himself of a common law remedy.

695 N.E.2d at 636–37.

{35} Further, it is not only the threat of large damage verdicts that employers avoid by participating in the workers' compensation system. It is also the costs of litigating in district court, which are not insubstantial, even if the case is concluded on summary judgment motions.

{36} Thus, I would rule that a worker who wished to bring a *Delgado* claim against the employer should have to forego the benefits provided by the Workers' Compensation Act, just as the workers did in the *Delgado* case itself (as was established in the record in this case) and in the *Eldridge* case, 1997–NMCA–

022, ¶ 3, 123 N.M. 145, 934 P.2d 1074. If the tort claim fails, then there would be the possibility that the worker might be able to pursue workers' compensation benefits. *See Larson's* § 102.03[1] (indicating that a choice of an unsuccessful remedy is not an election). In such a case, the sentiments on which the majority rely might carry the day.

**2. *Pleading Requirements***

{37} I concur in the portion of the majority opinion holding that without its own affidavit establishing the facts concerning its state of mind, Employer was not entitled to summary judgment. That portion of the opinion is based on existing New Mexico law, and Worker was not on notice that the allegations of his complaint were insufficient. However, if this state is to place itself in the company of those states that allow workers to collect compensation benefits and then sue in tort, I believe that it would be both prudent and most consistent with the balance struck by the Workers' Compensation Act to require a worker to plead facts showing that the *Delgado* standard is met.

{38} Our most recent cases of *Dominguez* and *Morales* have required a level of egre-giousness of employer behavior comparable to that found in *Delgado. See Dominguez v. Perovich Props., Inc.,* 2005–NMCA–050, ¶¶ 7, 21–22, 137 N.M. 401, 111 P.3d 721; *Morales,* 2004–NMCA–098, ¶¶ 9–14. *Larson's* commends courts for being appropriately conservative in limiting exceptions to exclusivity "to the most egregious cases." *Id.* § 103.04, at 103–34.1. *Larson's,* however, goes a step further, and points out the importance of requiring the pleading of facts that would bring the case within the exception to exclusivity such that bare conclusory allegations are insufficient. *Id.* § 103.05. So as not to require employers to litigate in circumstances where a worker cannot establish the requisite *Delgado* willfulness at the time of the filing of the complaint, I would adopt a pleading requirement in *Delgado* cases that requires workers to plead sufficient facts demonstrating that the standard is met or be subject to dismissal for failure to state a claim upon which relief can be granted.