2007-NMSC-019

158 P.3d 449

**Phillip SALAZAR, Plaintiff–Respondent,**

v.

**Richard L. TORRES, individually and as owner and operator of Richard L. Torres Concrete Company, Defendant–Petitioner.**

No. 29,476.

Supreme Court of New Mexico.

April 18, 2007.

Riley, Shane & Hale, P.A., Richard J. Shane, Susan R. Johnson, Albuquerque, for Petitioner.

Morris Law Firm, P.A., Kerry Morris, Albuquerque, Dunn Law Offices, Ralph Rodney O. Dunn III, Rio Rancho, for Respondent.

## OPINION

BOSSON, Justice.

{1} We are asked to address a question left unanswered by this Court in *Delgado v. Phelps Dodge Chino, Inc.,* 2001–NMSC–034, 131 N.M. 272, 34 P.3d 1148: When a worker is injured on the job and questions whether the injury was intentionally inflicted by the employer, must the worker forego all benefits under the Workers' Compensation Act (the Act) while pursuing an intentional tort action under *Delgado?* Based on the clear intent of the Act, we conclude that the worker is not so constrained. However, we also conclude that when a worker enters into a final settlement of the workers' compensation claim in exchange for a lump-sum payment of indemnity benefits, then the worker may not proceed further with a *Delgado* claim. Because Phillip Salazar (Worker) asked for and received such a lump-sum payment, the district court correctly dismissed his *Delgado* action. The Court of Appeals having overturned the decision of the district court, we now reverse the Court of Appeals. *See Salazar v. Torres,* 2005–NMCA–127, 138 N.M. 510, 122 P.3d 1279.

## BACKGROUND

{2} On April 16, 2001, during the course and scope of his employment with Richard L. Torres and Richard L. Torres Concrete Company (jointly, Employer), Worker was injured when Employer directed him to pour gasoline onto a truck carburetor while another employee was instructed simultaneously to

start the truck. The gasoline ignited, causing first-degree burns to Worker's face and second- and third-degree burns to his arms and hands.

{3} Following his injury, Worker received workers' compensation benefits from Employer's insurer, including his medical expenses and weekly indemnity benefits of $213.33. *See* NMSA 1978, §§ 51–1–1 to –70 (as amended through 2005) (the Workers' Compensation Act). Then in November 2001, Worker filed for and received a partial lump-sum payment of $3,744.01 to pay debts accumulated during the course of his disability. *See* NMSA 1978, § 52–5–12(C) (2003). Worker subsequently filed another workers' compensation complaint for a lump-sum payment of permanent partial disability and attorney fees, as well as scheduled future medical benefits. On March 18, 2002, a mediator's recommended resolution gave Worker $11,000.00, representing all permanent partial disability and future indemnity benefits. Worker's medical benefits were left open so long as treatment was necessary. The agreement constituted a lump-sum payment under NMSA 1978, § 52–5–12(B) (2003) and was considered a complete resolution of Worker's compensation claim.

{4} Two days later, Worker filed a complaint in district court which alleged that these same injuries were caused by Employer's intentional, willful, and tortious misconduct similar to *Delgado*. Employer responded with a motion for summary judgment asserting that the benefits Worker had already received constituted his exclusive remedy. *See* § 52–1–9. The district court agreed and granted summary judgment for Employer. A divided panel of the Court of Appeals reversed, with Judge Pickard specially concurring in part and dissenting in part. We granted certiorari to resolve residual issues remaining after this Court's ground-breaking opinion in *Delgado*; namely, whether and when a worker can receive benefits under the Act without compromising a potential intentional tort action under *Delgado*.

## DISCUSSION

### Standard of Review

{5} "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. Because "neither party argues that genuine issues of material fact exist," and our review is thus limited to that of a legal question, we "review the disposition of the summary judgment motion[ ] de novo." *State Farm Mut. Auto. Ins. Co. v. Barker*, 2004–NMCA–105, ¶ 4, 136 N.M. 211, 96 P.3d 336.

### The Court of Appeals Opinion and the Law of Other Jurisdictions

{6} Employer argues that the exclusivity provision of the Act requires injured workers to forego any compensation benefits if pursuing, or contemplating the pursuit of, a tort claim for intentional injury. As both the Court of Appeals majority and dissent observe, there is a split in other jurisdictions regarding whether an injured worker can receive benefits and also pursue an intentional tort action. In those jurisdictions that allow a worker to receive workers' compensation benefits while pursuing an intentional tort claim, the analysis supporting the result is also divided. Some courts rely on classification of the injury as accidental, when seen from the worker's perspective, but also intentional and outside the Workers' Compensation Act when the intent requirement is examined from the employer's perspective. *See Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222, 228, 233 (1991) (holding worker could receive both workers' compensation benefits and pursue a tort action because the injury could be classified as both accidental and intentional). Other jurisdictions rely heavily on legislative intent and policy underlying the workers' compensation laws. *See Gagnard v. Baldridge*, 612 So.2d 732, 735–36 (La.1993) (relying on the legislature's intent in enacting workers' compensation act and holding that worker could receive workers' compensation benefits while pursuing a separate tort action); *Jones v. VIP Dev. Co.*, 15 Ohio St.3d 90, 472 N.E.2d 1046, 1054–55 (1984) (stating that the policy behind the workers' compensation act is to protect employers from negligence, not intentional acts,

and thus, worker could receive workers' compensation benefits while also pursuing an intentional tort action).

{7} Contrary to the jurisdictions that hold that an injury can be classified as both intentional and accidental, those jurisdictions that bar workers from seeking both forms of redress assert that the event causing the injury cannot be classified as accidental in one forum and intentional in another. *See Williams v. Delta Steel Corp.*, 695 N.E.2d 633, 637 (Ind.Ct.App.1998) (holding worker could not receive workers' compensation benefits and then file a tort claim against employer because an injury cannot be both accidental and intentional); *Medina v. Herrera*, 927 S.W.2d 597, 600–01 (Tex.1996) (holding worker could not receive benefits under the workers' compensation act and then file a tort claim because worker was barred by the doctrine of election of remedies). *See generally* 6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 102.03[2] (2006) [hereinafter *Larson's*] ("A successful [workers'] compensation claim will ordinarily bar a subsequent damage suit . . . ." (footnote omitted)).

{8} With regard to Worker's present claim, our Court of Appeals held that the injury could be characterized as both accidental from the worker's perspective (not self-inflicted or willful), and also intentional when evaluating the employer's conduct. *Salazar*, 2005–NMCA–127, ¶¶ 6, 17, 138 N.M. 510, 122 P.3d 1279. However, the distinction between accidental and intentional was not the primary thrust of the opinion. The majority's holding also relied on policy factors underlying the legislative intent behind the Act, and discussion of those factors in prior opinions of our respective courts. *Id.* ¶¶ 8–17; *accord Delgado*, 2001–NMSC–034, 131 N.M. 272, 34 P.3d 1148; *Eldridge v. Circle K Corp.*, 1997–NMCA–022, 123 N.M. 145, 934 P.2d 1074.

{9} Judge Pickard's dissent acknowledged the importance of policy, stating that "the real reason for holding one way or another on the issue at hand . . . should be one's views of the policy and philosophy behind the Workers' Compensation Act." *Salazar*, 2005–NMCA–127, ¶ 34, 138 N.M. 510, 122 P.3d 1279 (Pickard, J., specially concurring in part and dissenting in part). We agree. Considerations of policy and philosophy that inform the legislative intent behind the Act are vital to our resolution of the issue before us. Accordingly, we turn our discussion to those policy considerations and how they affect Worker's *Delgado* claim.

### The Policy and Philosophy of the Act

■ {10} One policy factor of great concern is that any judicial analysis under the Act must balance equally the interests of the worker and the employer without showing bias or favoritism toward either. NMSA 1978, § 52–5–1 (1990) (The Act is not to be construed "in favor of the claimant or employee on the one hand, nor are the rights and interests of the employer to be favored over those of the employee on the other hand."). The legislature has spoken clearly that the Act is designed to afford "benefits to both workers and employers." *Delgado*, 2001–NMSC–034, ¶ 12, 131 N.M. 272, 34 P.3d 1148.

{11} Recognizing that evenhandedness, the Act makes workers' compensation benefits the worker's exclusive remedy for all accidental injuries. Section 52–1–9; *see also* § 52–1–6(E) ("The Workers' Compensation Act provides exclusive remedies."); *Delgado*, 2001–NMSC–034, ¶ 12, 131 N.M. 272, 34 P.3d 1148 ("The employer . . . is assured that a worker accidentally injured, even by the employer's own negligence, will be limited to compensation under the Act and may not pursue the unpredictable damages available outside its boundaries."). The worker's benefit, on the other hand, is the receipt of "compensation quickly, without having to endure the rigors of litigation or prove fault on behalf of the employer." *Delgado*, 2001–NMSC–034, ¶ 12, 131 N.M. 272, 34 P.3d 1148. Thus, the balance struck between workers and employers under the Act is a "mutual renunciation of common law rights and defenses." Section 52–5–1. This quid pro quo, as it has been referred to by this Court, is part of the bargain struck under the Act, providing workers with certain, albeit limited, compensation " '[i]n return for the loss of a common law tort claim for accidents arising

out of the scope of employment.' " *Delgado,* 2001–NMSC–034, ¶ 12, 131 N.M. 272, 34 P.3d 1148 (quoting *Coates v. Wal–Mart Stores, Inc.,* 1999–NMSC–013, ¶ 22, 127 N.M. 47, 976 P.2d 999).

▇ {12} Keeping in mind the importance of assigning equal weight to the worker's and employer's interests under the Act, we are mindful that certain actions fall outside the Act's provisions. The legislature is specific on this point. For example, no compensation is due under the Act if worker's injury is "willfully suffered by him," in other words self-inflicted. NMSA 1978, § 52–1–11 (1989). Similarly, if an employer willfully harms a worker, the injury is deemed intentional, and the Act does not shield the employer from a lawsuit for intentional tort. *Delgado,* 2001–NMSC–034, ¶¶ 15, 24, 131 N.M. 272, 34 P.3d 1148.

{13} In *Delgado,* we made clear, based in part on the policy of treating both the employer and worker equally, that the legislature never intended that employers causing intentional harm to their employees would be protected by the Act's exclusivity provisions, just as workers who intentionally harm themselves are not protected by the Act. *Id.* ¶¶ 17, 21, 23–24. Implicit in this policy of evenhandedness is an understanding that both employers and workers must be given equal opportunity to investigate, explore, and eventually decide whether the injury was accidental, falling exclusively under the Act, or intentional, falling outside of the Act. Workers must have an opportunity to seek recourse from employers who willfully injure their employees, just as employers can question whether a worker's injury was self-inflicted. *See id.* ¶ 21. In many instances, the answer may not be clear-cut, depending, as it may, upon the interpretation of evidence, which in some cases only a jury can resolve. This process of investigation may take considerable time to complete, a consequence that is especially true for tort claims under *Delgado.*

{14} *Delgado* established a high threshold of culpability that should eliminate many claims before trial. *See Dominguez v. Perovich Props., Inc.,* 2005–NMCA–050, ¶¶ 2, 21–22, 25, 137 N.M. 401, 111 P.3d 721 (holding that summary judgment was proper to bar worker's *Delgado* claim where confusion between a supervisor and employee led to a worker's injury from a conveyor belt at a gravel processing operation); *Morales v. Reynolds,* 2004–NMCA–098, ¶¶ 9–14, 24, 29, 136 N.M. 280, 97 P.3d 612 (affirming the district court's grant of summary judgment in two cases where the worker alleged an intentional injury but the facts did not rise to the egregious level necessary for a *Delgado* claim). In light of this high threshold, injured workers must be afforded a reasonable time to investigate, including pre-trial discovery, whether they have a sustainable *Delgado* claim. *See Delgado,* 2001–NMSC–034, ¶¶ 26–28, 131 N.M. 272, 34 P.3d 1148 (describing two prongs of the *Delgado* test that plaintiff must prove to determine if the injury was caused by willful behavior). It may not be until the summary judgment stage, or even trial, that a worker has the answer.

{15} In the meantime, what is the worker to do? Must the worker make a decision, informed or not, at the moment of injury as to whether the injury was accidentally or intentionally caused? It would seem not. As a practical matter, requiring such a consequential decision at such an early juncture might force workers, many of whom are out of work and requiring medical attention, to forego the possibility of a *Delgado* claim in exchange for the immediate sustenance of worker's compensation. Many *Delgado* claims would never be investigated, much less adjudicated, due to sheer economic necessity.

{16} We agree with Worker's position that the legislature could not have intended such a result, at least not one so premature, particularly when we are aware of no similar burden imposed by the Act upon employers. We are impressed by the observations of the Ohio Supreme Court which noted that,

> [i]n most cases, practical considerations will compel the worker to accept the easier, more immediate relief afforded by the Act, even though these benefits do not fully compensate the worker. Most seriously injured workers are not in a financial position to wait out a lengthy, expensive, and risky court proceeding to be compensated for the injury, due to the problems of

pressing medical bills, and often the inability to work. Many will thus be forced by harsh realities to opt for workers' compensation.

*Jones*, 472 N.E.2d at 1054. These same "harsh realities" pressure workers in New Mexico too. And such "harsh realities" may work the other way, forcing workers to forego workers' compensation in the hopes of protecting a potential *Delgado* claim. Yet the legislative policy of the Act encourages workers to seek prompt and adequate medical attention, hopefully to return to work as soon as possible. *See* § 52–1–26(A) (stating the legislative intent that injured workers should "be provided with the opportunity to return to gainful employment as soon as possible"). Anything that might impede the process of returning injured workers to productive lives, such as requiring the worker to choose too early between two irreconcilable paths, threatens to undercut the will of the legislature.

{17} Although perhaps an extreme example, we are also concerned about those few instances in which unscrupulous employers willfully put aside the safety of their employees for economic advantage. For example, an employer who willfully causes injury to a worker could elect to not contest the workers' compensation claim, "thereby facilitating the receipt of limited compensation, and then reap the rewards of absolute immunity from further liability." *Jones*, 472 N.E.2d at 1054. In New Mexico, an employer has the ability to file a workers' compensation claim for workers who have not filed such claims on their own behalf, and may do so to ensure their actions fall under the exclusivity provisions of the Act. NMSA 1978, § 52–5–5(A) (1986) ("When a dispute arises under [the Act], . . . *any party* may file a claim . . . ." (emphasis added)). Employers have sought such advantage before. *See, e.g., Eldridge*, 1997–NMCA–022, ¶¶ 4–6, 123 N.M. 145, 934 P.2d 1074 (noting that the employer filed a claim for determination of benefits with the Workers' Compensation Administration even though the worker's family had not sought benefits under the Act, preferring instead to pursue an action for intentional tort).

{18} The Workers' Compensation Act and its exclusivity provisions were never intended to shelter employers from the potential consequences of willful misconduct. The legislature made clear that the Act is meant to protect employers from lawsuits for accidental or negligent conduct, not intentional tortious conduct. *See Delgado*, 2001–NMSC–034, ¶ 15, 131 N.M. 272, 34 P.3d 1148 (noting that the employers' privilege of immunity from tort liability under the Act is for injuries accidentally sustained, not those caused by employer or employee misconduct, citing §§ 52–1–9(C), –11); *see also Woodson*, 407 S.E.2d at 227 ("[T]he legislature did not intend to relieve employers of civil liability for intentional torts which result in injury or death to employees."); *Jones*, 472 N.E.2d at 1054 (" '[T]he protection afforded by the Act has always been for negligent acts and not for intentional tortious conduct.' " (quoted authority omitted)). We adopted the willfulness test in *Delgado*, in part, because "the Act was [n]ever intended to immunize employers from liability for intentional torts." *Delgado*, 2001–NMSC–034, ¶ 30, 131 N.M. 272, 34 P.3d 1148. Our decision to allow workers to bring intentional tort actions while receiving interim workers' compensation benefits helps foster that legislative policy of not "immuniz[ing] employers from liability for intentional torts." *Id.*

{19} For all these reasons, we hold that Section 52–1–6(E) is not an outright bar to a worker's claim for intentional tort. Section 52–1–6(E) states that "[the Act] provides exclusive remedies . . . . for any matter relating to the occurrence of or payment for any injury or death *covered by the . . . Act*." (Emphasis added.) As noted above, the legislature has specifically exempted intentional acts or omissions from coverage under the Act. *See Delgado*, 2001–NMSC–034, ¶ 15, 131 N.M. 272, 34 P.3d 1148. Thus, the Act's language does not prohibit a worker from filing an intentional tort action while receiving interim workers' compensation benefits. The injury, if determined to be intentional, would fall well outside the bounds of the Act. And if the injury is determined to be accidental, the worker would still only get the same

workers' compensation benefits to which the worker was always entitled.

{20} We wish to emphasize that, contrary to Employer's concerns, our holding will never enable the worker to recover twice, first in workers' compensation and then in tort. In the event of a successful tort action, the employer's workers' compensation carrier would be subrogated to any recovery in tort so as to obtain reimbursement for benefits actually paid. The same would be true for a self-insured employer. The worker is entitled to only one recovery, which appears consistent with most jurisdictions where workers can pursue both avenues of relief. *See Gagnard*, 612 So.2d at 736; *Woodson*, 407 S.E.2d at 233. *But see Jones*, 472 N.E.2d at 1055 ("Allowing a worker to receive workers' compensation benefits in conjunction with common-law damages in no way constitutes a double recovery."). *See generally Larson's, supra,* § 103.02. As the North Carolina Supreme Court noted in *Woodson*, "[d]ouble recovery should be avoided by requiring the claimant who recovers civilly against his employer to reimburse the workers' compensation carrier to the extent the carrier paid workers' compensation benefits, or by permitting the carrier to become subrogated to the claimant's civil claim to the extent of benefits paid." 407 S.E.2d at 233. Thus, employers will not be forced to pay twice for a single injury.[1]

{21} Employer asserts that even if double recovery is barred, allowing the worker to pursue a tort claim while simultaneously receiving benefits tips the balance found in the Act "entirely to the side of the worker . . . by allowing a worker to obtain the expeditious payment of benefits without giving up anything." *Salazar*, 2005–NMCA–127, ¶ 34 (Pickard, J., specially concurring in part and dissenting in part). We do not agree. The worker continues to "give up" any lawsuit against the Employer for negligence causing worker's injury. The only thing the worker does not "give up" is a *Delgado* suit, which is outside the Act.

{22} Employer emphasizes that the Act benefits employers not simply by enabling them to avoid common law tort awards for accidental injury, but also by allowing them to avoid the expense of defending such common law claims in the first place. We acknowledge that under our holding here, employers who pay compensation benefits may, in some cases, also have to pay legal fees to defend an intentional tort action under *Delgado*. Even if the worker's *Delgado* claim is ultimately dismissed, the employer will never recover the cost of those legal fees. However, the Act does not insulate employers from such contingencies. As noted above, the legislature intended to protect employers from negligence actions for accidental injury, not actions for intentional tort. *See Delgado*, 2001–NMSC–034, ¶ 15, 131 N.M. 272, 34 P.3d 1148. Accordingly, an employer is protected from having to defend negligence lawsuits, but not against the expense of lawsuits grounded in intentional or willful behavior. We observe that in some instances, perhaps most, prudent employers have the ability to anticipate and plan for the possibility of paying future attorney fees to defend against *Delgado* claims. Workers, on the other hand, can rarely plan for injuries inflicted by the willful misconduct of their employers.

{23} Additionally, Employer asserts that Worker is violating the doctrine of election of remedies by receiving benefits under the Act for an accidental injury while also pursuing damages in district court for an intentional injury. According to Employer there are "two inconsistent existing reme-

---

1. Employer argues that allowing a worker to receive benefits and then file a *Delgado* claim in effect makes the employer fund lawsuits against itself. We cannot agree. Worker's compensation benefits are closely monitored by the Workers' Compensation Judge (WCJ), who has the ability to reject certain compensation requests. *See* § 52–5–12; *see also Strong v. Sysco Corp./Nobel Sysco*, 108 N.M. 639, 641–42, 776 P.2d 1258, 1260–61 (Ct.App.1989) (holding that the workers' compensation hearing examiner did not abuse his discretion in denying a lump-sum payment of attorney fees). The initial benefit payments are set by a strict formula set forth by the legislature that does not take into account legal fees. *See* §§ 52–1–26.1 to –26.4. These statutory limitations on the benefits allowed will serve as limitations on what the compensation benefits are used for, and will not likely include the payment of legal fees incurred by a worker in pursuing a *Delgado* claim.

dies" in violation of the election of remedies doctrine. *Romero v. J.W. Jones Constr. Co.,* 98 N.M. 658, 661, 651 P.2d 1302, 1305 (Ct. App.1982). The doctrine of election of remedies applies when a plaintiff has made a specific choice between inconsistent remedies. *Id.* " '[C]ommencement of the action is not of itself a conclusive choice of remedies.' " *Id.* (quoting *Honaker v. Ralph Pool's Albuquerque Auto Sales, Inc.,* 74 N.M. 458, 464, 394 P.2d 978, 982 (1964)).

{24} In *Romero,* the Court of Appeals indicated that, had the worker received a compensation award (judgment) and then filed a tort action, the tort claim would have been barred by the worker's election. *See id.* at 661–62, 651 P.2d at 1305–06. We agree. As we will discuss later in this opinion, once a final judgment is made as to the nature of the injury, either by the district court or by a final settlement of the compensation claim, the worker is barred from pursuing a tort action. But *Romero* also appears to indicate that the mere receipt of interim benefits under worker's compensation does not necessarily qualify as an election of remedies, because it does not constitute a conscious choice, pursued to its "conclusion," of one remedy over another. *Id.* Thus, we see nothing in *Romero* that would interpose the doctrine of election of remedies as a defense for the employer, at least not before a worker has taken the compensation claim to final judgment.

{25} Indeed, as our Court of Appeals noted in *Eldridge,* the workers' compensation judge should avoid any final adjudication of the cause of an injury, and therefore any problem with an election of remedies, when it might interfere with a district judge tasked with the same decision in a pending *Delgado* suit. 1997–NMCA–022, ¶¶ 29–30, 123 N.M. 145, 934 P.2d 1074. Our Court of Appeals correctly determined in *Eldridge* that the district court has priority jurisdiction to decide "whether claims have been stated that fall outside the Act." *Id.* ¶ 29. But this does not mean that workers' compensation proceedings must be stayed or barred altogether because a *Delgado* suit is pending in court. The *Eldridge* opinion acknowledged the possibility of "some administrative burden upon both the [Workers' Compensation Administration] and employers," because claims might have to be held open "for an undetermined period of time awaiting final judicial resolution of the claim for intentional tort." *Id.* ¶ 30. We need only clarify here that while worker's compensation claims are held open awaiting adjudication in the district court, they are to be paid on an interim basis, subject of course to employer's right to reimbursement from any tort recovery.

## The Effect of a Lump–Sum Payment

{26} While the district court is the better forum for determining whether the injury was accidental or intentional, a worker may elect for the workers' compensation judge to make the final determination, thereby barring any subsequent tort claim. After receiving temporary medical and indemnity benefits, an injured worker can request more permanent benefits from the Workers' Compensation Administration. These benefits are called "lump-sum" payments. Section 52–5–12(A). Such benefits involve a lump-sum payment of periodic benefits that would otherwise be received at some point in the future. In exchange, a worker "is not entitled to any additional benefit income for the compensable injury." Section 52–5–12(B). Lump-sum payments "release ... the employer from liability for future payments of compensation or medical benefits." Section 52–5–12(A). Such lump-sum payments are not favored. *See id.* In most cases, periodic payments are preferred so as to facilitate a return to "gainful employment as soon as possible with minimal dependence on compensation awards." Sections 52–1–26(A); *accord* 52–5–12(A).

{27} An award of a lump-sum payment pursuant to Section 52–5–12(A) to resolve a compensation claim against an employer amounts to a final determination that the injury was accidental. Requesting such extensive benefits goes beyond providing an injured worker with an opportunity to have a district court make a determination regarding the nature of the injury. It is an anticipatory payment of all future benefits. A worker receives this large payment to complete the compensation claim. *See* § 52–5–

12(B). To allow a worker to receive such future benefits, and then subsequently pursue a *Delgado* claim in district court, would be unfair to the employer, tilting the statutory balance of the Act in favor of the worker, and therefore contrary to legislative intent. *See Salazar*, 2005–NMCA–127, ¶ 34, 138 N.M. 510, 122 P.3d 1279 (Pickard, J., specially concurring in part and dissenting in part).

{28} In contrast, we note that sometimes *partial* lump sum payments are made. While both forms of payment, lump sum and partial lump sum, are found in the same section of the Act, partial lump-sum payments are allowed for the specific purpose of paying off debts accrued during the disability. Section 52–5–12(C). The Workers' Compensation Judge monitors such claims and ensures that such payments are only allowed for legitimate debts accrued during the disability. *Id.* Because such payments are partial, meaning they are only an advance of some of the worker's periodic indemnity payments and not an advance of the entire indemnity claim, they do not constitute a final resolution of the compensation claim.

{29} In this case, Worker received a lump-sum payment representing a settlement of all future benefits aside from medical, which were left open. This award was considered a complete resolution of Worker's claim against Employer. When Worker made this election, he allowed the workers' compensation judge to make a final determination that the cause of the injury was accidental. It would be contradictory to the Act to allow worker to file a subsequent *Delgado* claim under these circumstances. For this reason, we conclude that Worker's *Delgado* claim in district court is barred.

**CONCLUSION**

{30} For the forgoing reasons, we reverse the opinion of the Court of Appeals and reinstate the district court's dismissal of this action.

{31} IT IS SO ORDERED.

WE CONCUR: EDWARD L. CHAVEZ, Chief Justice, PATRICIO M. SERNA, and PETRA JIMENEZ MAES, Justices.

PAMELA B. MINZNER, Justice (concur in part and dissent in part).

MINZNER, Justice (concurring in part and dissenting in part).

{32} I respectfully dissent from the analysis in the majority opinion, although I concur in the result, which is that Worker is barred from pursuing a claim under *Delgado v. Phelps Dodge Chino, Inc.*, 2001–NMSC–034, 131 N.M. 272, 34 P.3d 1148. I agree with Judge Pickard, who concurred in part and dissented in part from the Court of Appeals' opinion, "that a worker who wishe[s] to bring a *Delgado* claim against the employer should have to forgo the benefits provided by the Workers' Compensation Act," at least temporarily. *Torres v. Salazar*, 2005–NMCA–127, ¶ 36, 138 N.M. 510, 122 P.3d 1279 (Pickard, J., dissenting). I also think she is right that "[i]f the tort claim fails, then there would be the possibility that the worker might be able to pursue workers' compensation benefits." *Id.* I tend to think the worker should be able to do so. *See Eldridge v. Circle K Corp.*, 1997–NMCA–022, ¶ 26, 123 N.M. 145, 934 P.2d 1074.

{33} If we remain faithful to the idea that a *Delgado* claim is an unusual one, based on egregious behavior, the initial choice need not require a long delay. If, however, we think more tort claims are going to be permissible, and the high threshold we established in *Delgado* will be lowered, then perhaps we are opening up a category of tort claims that is much larger than we anticipated in *Delgado*, and will require more discovery. I am not persuaded this Court had that outcome in mind in deciding *Delgado*.

{34} For these reasons, I concur only in the result of the majority opinion. I agree with the separate opinion of Judge Pickard. My colleagues being of a different view, I concur in part and dissent in part.